GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
MARK M. WEISENMILLER
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*[Proposed] Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>RKJ HOTEL MANAGEMENT, LLC, a Nevada limited liability company,<br><br>               Debtor. | Case No.: BK-S-21-10593-nmc<br><br>Chapter 11<br><br><br>Date:  **OST REQUESTED**<br>Time:  **OST REQUESTED** |

### DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING MAINTENANCE OF PREPETITION CASH MANAGEMENT SYSTEM AND BOFA BANK ACCOUNT; AND (II) GRANTING RELATED RELIEF

RKJ Hotel Management, LLC, debtor and debtor-in-possession ("**Debtor**"), by and through its proposed counsel, Garman Turner Gordon, hereby respectfully submits its emergency motion ("**Motion**") for interim and final orders, substantially in the form attached hereto as **Exhibit 1** and **2**, respectively, pursuant to Sections[1] 105, 363(c)(1), 1107(a), and 1108, and Local Rule 4001(e), authorizing Debtor to maintain its prepetition Cash Management System and BofA Bank Account (as those terms are hereinafter defined) and related relief.

This Motion is made and based upon the following Memorandum of Points and Authorities, the *Omnibus Declaration of Jeff Katofsky in Support of First Day Motion* ("**First Day Declaration**") filed concurrently herewith, the papers and pleadings on file herein, judicial notice

---

[1] Unless otherwise stated, all references to "Sections" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

of which is hereby respectfully requested pursuant to Federal Rule of Evidence 201, and the argument of counsel entertained by the Court at the time of the hearings on the Motion.

**I.**
**JURISDICTION AND VENUE**

1.     On February 9, 2021 ("**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 case ("**Chapter 11 Case**").

2.     Debtor continues to operate its business and manage and preserve its property as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108.

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134.

4.     Venue of the Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory basis for the relief sought herein arises from Sections 105, 363(c)(1), 1107(a), and 1108, and Local Rule 4001(e).

6.     Pursuant to Local Rule 9014.2, Debtor consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

**II.**
**BACKGROUND FACTS**

**A.     Debtor's Business and Assets.**

7.     Debtor is a Nevada limited liability company that owns and operates the Delta Hotel Detroit Metro Airport ("**Hotel**"), located at 31500 Wick Road, Romulus, Michigan 48174 ("**Property**"), pursuant to a *Franchise Agreement* with Marriott International, Inc. ("**Marriott**"), dated March 22, 2018 ("**Franchise Agreement**"). See First Day Declaration, ¶ 6.

8.     The Hotel provides a seamless full-service hotel experience that has been designed to meet the essential needs of every traveler.  It is conveniently located minutes from the DTW airport, making traveling easy with a complimentary airport shuttle service.  The Hotel has ample

parking for overnight guests and quick access to I-94, it is an easy drive to local attractions including The Henry Ford Museum and Detroit Zoo. See First Day Declaration, ¶ 7.

9.      All guest rooms feature plush bedding, a mini-fridge and comfortable work desk with access to the 24-hour fitness center and indoor/seasonal outdoor pool. See id., ¶ 8.

10.     The Hotel also has more than 15,000 square feet of flexible event space fit for small meetings or large celebrations and catering provided by the Hotel's in-house culinary team. The Hotel also seats up to 350 guests for weddings and provides related services. See id., ¶ 9.

11.     The Hotel includes the mETRO pOLIS for breakfast, lunch, or dinner and Jyllian's Bakery for coffee and quick breakfast bite. See id., ¶ 10.

**B.      Debtor's Prepetition Capital Structure.**

12.     *The Loan*. On January 14, 2020, Debtor and Rialto Mortgage Finance, LLC ("**Rialto Mortgage**") executed the *Loan Agreement*, pursuant to which Rialto Mortgage loaned Debtor the principal amount of Twenty Million Five Hundred Thousand Dollars ($20,500,000) ("**Loan**"), evidenced by a *Promissory Note,* also dated January 14, 2020, by Debtor. See id., ¶ 16.

13.     *The Mortgage*. The Loan is secured by a *Mortgage,* dated January 14, 2020, under which Debtor purportedly granted Rialto Mortgage: (i) a mortgage in the; (a) land (the Property), (b) additional land, (c) improvements, (d) easements, (e) fixtures and personal property, (f) leases and rents, (g) condemnation awards, (h) insurance proceeds, (i) tax certiorari, (j) conversion, (k) rights, (l) agreements, (m) intangibles, (n) accounts, (o) causes of action, (p) accounts receivable, and (q) other rights; (ii) an assignment of leases and rents; (iii) a security agreement in real and personal property; (iv) a fixture filing; and (v) a pledge of monies held. Rialto Mortgage recorded the Mortgage on January 22, 2020 with the Wayne County Register of Deeds. See id., ¶ 17.

14.     True and correct copies of the Loan Agreement, Promissory Note, and Mortgage are attached to the First Day Declaration as Exhibits 1, 2, and 3, respectively. See id., ¶ 18.

15. *Additional Loan Documents*.  The following pertinent financing documents were also executed in conjunction with the Loan (referred to collectively with the Loan Agreement, Promissory Note, and Mortgage, among other documents, as the "**Loan Documents**"):

    a. *Cash Management Agreement*, dated January 14, 2020, between Debtor, Rialto Mortgage, and Wells Fargo Bank, National Association ("**Wells Fargo**").

    b. *Deposit Account Control Agreement* ("**DACA**")*,* dated January 14, 2020, by Debtor, Rialto Mortgage, and Wells Fargo, under which Debtor and Wells Fargo acknowledged and confirmed that Debtor would established with Wells Fargo the DACA Account (defined below), and that the DACA Account would be subject to the lockbox services provided by Wells Fargo in accordance with Section 7 of the DACA and Wells Fargo's standard lockbox policies and procedures.

    c. *UCC Financing Statements* filed by Rialto Mortgage with the (i) County Clerk of Wayne County, MI, and (ii) Secretary of State of Nevada, under which Rialto Mortgage purportedly perfected a security interest in Debtor's: (a) land (the Property); (b) additional land; (c) improvements; (d) easements; (e) fixtures and personal property; (f) leases and rents; (g) condemnation awards; (h) insurance proceeds; (i) tax certiorari; (j) conversion; (k) rights; (l) agreements; (m) intangibles; (n) accounts; (o) causes of action; (p) accounts receivable; and (q) other rights.  Rialto Mortgage recorded a financing statement with the Nevada Secretary of State on January 14, 2020, and a fixture filing with Wayne County Register of Deeds on November 23, 2020.

16. True and correct copies of the Cash Management Agreement, DACA, and unfiled UCC Financing Statements are attached to the First Day Declaration as **Exhibits 4, 5, 6, & 7**.  See First Day Declaration, ¶¶ 19-20.

17. The Loan Documents were purportedly assigned to, and are now held by, RSS WFCM2020-C55 – MI RHM, LLC ("**RSS**" and together with Rialto Mortgage, "**Rialto**").  See id., ¶ 21.

18. *Prepetition Loan Obligations*.  As of the Petition Date, the aggregate principal amount outstanding under the Loan was approximately $20,472,280.67.  See id., ¶ 22.

**C.**    **Debtor's Cash Management System, Bank Accounts, and Accounting Program.**

19. Debtor has one centralized cash management system ("**Cash Management System**") to collect and transfer funds generated from Debtor's operations.  See id., ¶ 52.

20.    In the ordinary course of its business, Debtor utilizes the Cash Management System to efficiently collect, transfer, and disburse funds generated through Debtor's operations. See First Day Declaration, ¶ 53.

21.    Debtor has the following three unrestricted bank accounts utilized in the Cash Management System (together, "**Bank Accounts**"):

- Bank of America ("**BofA**") – ending in 6451 ("**BofA Account**") is utilized as the depository for cash and credit card payments received by Debtor from operations, that are then swept from the BofA Account and deposited into the General Account and, if needed, from the General Account into the Petty Cash Account (as those terms are defined below).   Any checks issued from the BofA Account are to the General Account.   There are no ACHs other than credit card processing and related fees.

- US Metro Bank - General Account – ending in 3157 – ("**General Account**") receives funds from the BofA Account, is utilized to pay vendors, and transfer funds to the Petty Cash Account as needed.

- US Metro Bank – Petty Cash Account – ending in 4056 – ("**Petty Cash Account**") is utilized for petty cash as needed.

22.    BofA is an "authorized depository."   Because Debtor requires a bank with a local branch in Michigan to accept cash and check deposits and Debtor already has established the CC Processor arrangement with the BofA Account, which arrangement could take more than a month to replace, Debtor's continued maintenance of the BofA Account is necessary.  See id., ¶¶ 54-55.

23.    Debtor understands that US Metro Bank is not an authorized depository, and as such, Debtor is in the process of closing the General Account and Petty Cash Account at US Metro Bank and opening a debtor-in-possession account with BofA.  As such, Debtor will maintain the BofA Account and the new debtor-in-possession account with BofA (the "**DIP Accounts**") during the pendency of the Chapter 11 Case.  See id., ¶ 56.

24.    In conjunction with the Loan, Debtor was to open two or more restricted bank accounts at Wells Fargo (together, "**Restricted Bank Accounts**") to be subject to the Cash Management Agreement and the DACA.  However, because Wells Fargo did not have a local branch in Michigan to accept cash and check deposits, the Restricted Bank Accounts were never opened. See id., ¶ 57.

25. The DIP Accounts will tie into and provide data to Debtor's Accounting Program (defined hereinafter) to accurately record such collections, transfers, and disbursements as they are made. See First Day Declaration, ¶ 58.

26. Specifically, Debtor uses M3 Hospitality Accounting - Analytics Software ("**Accounting Program**"). See id., ¶ 59.

27. Additionally, Debtor has an agreement with credit card processing company JPMorgan Chase Bank, N.A. in its capacity as a member of several Card Networks and Paymentech, LLC ("**CC Processor**"), that deposits credit card payments received by Debtor into the BofA Account. See id., ¶ 60.

### III.
### REQUESTED RELIEF

28. By this Motion, Debtor requests interim and final orders, substantially in the form attached hereto as Exhibits 1 and 2, respectively, providing all of the following relief:

    a. that Debtor is authorized and empowered to: (1) maintain its Cash Management System and BofA Account in existence as of the Petition Date; (2) treat the BofA Account for all intents and purposes as a debtor-in-possession account; (3) use, in their present form, existing checks and other documents related to the BofA Account; (4) pay from the BofA Account prepetition and postpetition ordinary course bank fees in connection with the BofA Account; and (5) perform their obligations under the documents and agreements governing the BofA Account;

    b. that Debtor shall maintain records of all transfers and transactions so that all transfers and transactions are adequately and promptly documented in, and ascertainable and traceable from, Debtor's Accounting Program;

    c. that regarding the BofA Account, BofA is authorized and directed to: (1) continue to administer, service, and maintain the BofA Account as such accounts was administered, serviced, and maintained prior to the Petition Date without interruption and in the usual and ordinary course; and (2) pay any and all checks, drafts, wires, automated clearinghouse (ACH) transfers, electronic fund transfers, or other items presented, issued, or drawn on the BofA Account (collectively, "**Debits**") on account of a claim arising on or after the Petition Date so long as there are sufficient collected funds in the relevant BofA Account and in accordance with the agreements governing said BofA Account, including, without limitation, any prepetition cash management agreements, merchant service agreements, or treasury services agreements;

    d. that no Debits issued on the BofA Account prior to, but presented after, the commencement of Debtor's Chapter 11 Case are honored or paid, other than the Permitted Checks (defined below) explicitly provided for herein, or as otherwise permitted by Court order after notice and a hearing;

e.      that the Debtor will promptly provide BofA t with a list of pre-Petition Date checks that BofA is authorized to honor ("**Permitted Checks**"). If a vendor that was issued a Permitted Check refuses or is otherwise unable to re-present the prepetition check for payment, Debtor is authorized to issue a replacement check or cashier's check, as requested by such vendor;

f.      that those certain existing deposit agreements between Debtor and BofA regarding  the BofA Account shall continue to govern the postpetition cash management relationship between Debtor and the BofA, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect;

g.      that Debtor and BofA y, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts;

h.      that nothing contained in the Motion or its subsequent order may prevent Debtor from closing the BofA Account as it deems necessary and appropriate;

i.      that Debtor reimburses BofA for any claim arising prior to or after the Petition Date in connection with Debits deposited with the Bank which have been dishonored or returned for insufficient funds in the applicable accounts;

j.      that BofA  implement reasonable handling procedures to effectuate the terms requested in this Motion and not be liable to Debtor or its estate, or otherwise held in violation of this Motion or its subsequent order, for honoring a prepetition Debit or other Debit: (1) at the direction of Debtor that such prepetition Debit or other Debit be honored; (2) in the good faith belief that the Court has authorized that such prepetition Debit or other Debit be honored; or (3) as a result of an innocent mistake made despite implementation of such handling procedures;

k.      that, to the extent any other order (if any) is entered directing to honor Debits made, drawn, or issued in payment of prepetition claims, the obligation to honor such items are subject to the order granting this Motion;

l.      that Debtor and BofA are  authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the BofA Account, except and to the extent otherwise directed by the terms of the order;

m.      that BofA  is authorized to continue offsetting any funds deposited in the BofA Account by Debtor to the extent necessary to cover any fees, charges, and assessments set forth or provided for in the agreements governing the BofA Account or as otherwise permitted in the ordinary course of business pursuant to the agreements governing the BofA Account; and

n.      that Debtor and the CC Processor are authorized to perform their obligations pursuant to the terms of the agreement between Debtor and the CC Processor. Debtor seeks authorization to do and perform all acts, to make, execute, and deliver all instruments and documents, and to pay fees, charges, and expenses which may be

required or necessary for Debtor's performance under any agreements with the CC Processor.

29.    Allowing Debtor to maintain its Cash Management System will help to ease the transition into Chapter 11 and eliminate administrative burden.  Without the relief requested herein, Debtor would be required to close its existing BofA Account, open a new bank account at a cooperating depository, imprint new checks with the "Debtor-in-Possession" label, and reestablish the arrangement with the CC Processor and the new account at a time when Debtor needs to focus on reopening the Hotel and its reorganization effort.  Complying with such requirements will needlessly burden Debtor without a corresponding benefit to parties in interest. See First Day Declaration, ¶ 61.

30.    The Cash Management System is an ordinary, usual, and important business practice.  The Cash Management System enables Debtor to maintain control over the receipt and disbursement of cash, and to generate timely and accurate financial information critical to managing Debtor's business during the pendency of the Chapter 11 Case.  If these practices and procedures are disrupted, Debtor's effort to reorganize may be jeopardized.  See id., ¶ 62.

31.    The Cash Management System is similar to those commonly employed by corporate enterprises of comparable size and complexity.  Many corporate enterprises use the cash management system because it provides numerous benefits.  Among the most important of these benefits is the ability to control corporate funds and ensure cash availability, to reduce the cost of borrowed funds, to reduce administrative expenses, and to have easy access to timely and accurate financial information.  See id., ¶ 63.

32.    Establishing a new cash management system would entail significant delay and cost, particularly considering the system's complexity and reliability.  At a minimum, substantial disruptions to Debtor's business would occur by, among other things, delaying collection and disbursement of the payments to vendors and customers.  This would in turn harm stakeholder confidence, thus disrupting mutually beneficial relationships with trade creditors and customers, among others.  Such a negative impact on Debtor's operations would hinder a successful reopening of the Hotel and reorganization in Chapter 11.  See id., ¶ 64.

GARMAN TURNER GORDON
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

33.    Maintaining the existing Cash Management System, BofA Account, and CC Processor, and establishing the DIP Account with BofA, will not prejudice any party.  Debtor will maintain strict records with respect to all transfers of cash so that it is able to readily account for all transactions.  Debtor's maintenance of its existing Cash Management System is not only of critical importance to Debtor's business operations but is also in the best interests of Debtor's estate and creditors.  See First Day Declaration, ¶ 65.

34.    If the Cash Management System, BofA Account, or CC Processor are disrupted, Debtor will experience immediate and irreparable harm.  See id., ¶ 66.

## IV.
## LEGAL ARGUMENT

**A.**    **This Court has Authority to Grant the Relief Requested.**

Courts commonly approve a debtor's continued use of its prepetition cash management system, along with those related procedures and transactions used in the ordinary course of a debtor's business, particularly for a debtor with large and/or complex business operations. For example, in In re The Charter Co., 778 F.2d 617 (11th Cir. 1985), the bankruptcy court entered an order authorizing the debtor and 43 subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors herein." Id. at 618.  The United States Court of Appeals for the Eleventh Circuit further ruled that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with the provisions of the Bankruptcy Code, and in particular Section 363(c)(1) which allows a debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." Id. at 621. See also In re UNR Indus. Inc., 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984) (debtor utilized "a court-approved and common cash management system known as 'Zero Balance Account.'"); In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987) (court noted that fierce hostility between the creditors therein even made difficult "seemingly simple matters such as [the debtor's] motion to continue existing bank accounts and cash management system . . .").

Indeed, the purpose of Section 363(c)(1) is to provide a debtor-in-possession with the

flexibility to engage in those ordinary course transactions necessary to operate its business without unnecessary oversight by its non-lender creditors or the court.  See In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997); In re Enron Corp., 2003 WL 1562202, *15 (Bankr. S.D.N.Y. 2003).  Included within the scope of Section 363(c)(1) is a debtor-in-possession's ability to continue "routine transactions" required by such debtor's cash management system.  See In re Amdura Corp., 75 F.3d 1447, 1453 (10th Cir. 1996).

Moreover, a court's power to approve the continuation of a debtor's cash management system is provided by the statutory authority of Section 105, which allows a court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code,]" as well as carry out the core general principles of equity that form the foundation of the Bankruptcy Code.  The authority for, and wisdom of, approving the continuation of a debtor's cash management system is so well established that courts generally enter orders approving the continuation of a debtor's cash management system at or shortly after the beginning of a bankruptcy case, and most parties rarely contest these orders.  See, e.g., In re Lehman Brothers Holdings, Inc., 2008 WL 4902202, *2 (Bankr. S.D.N.Y. 2008) (court authorized the debtor to continue using its prepetition cash management system and bank accounts pursuant to Sections 105(a) and 363(c)).  When motions or orders to continue the use of a debtor's cash management system are contested, bankruptcy courts simply make conditions or amendments to its orders based on the facts and concerns presented in the cases before them.  See, e.g., In re The Colad Group, Inc., 324 B.R. 208, 216-217 (Bankr. W.D.N.Y. 2005) (court granted the continued use of the debtor's cash management system "for reasons of convenience," but required that any reordered company checks indicate the debtor's status as a debtor-in- possession); In re Enron Corp., 279 B.R. 671, 692 (Bankr. S.D.N.Y. 2002) (court restricted some cash sweeps to non-debtor entities).

However, most reported decisions which refer to a debtor's cash management system simply approve of the continuance of that debtor's system; thus, the inclusion of such information typically serves as no more than background to the legal issues that will be explored later in the opinion.  See, e.g., In re Kindred Healthcare, Inc., 2003 WL 22327933, *1 (Bankr. D. Del. 2003) (court noted that on the petition date the debtor filed a motion for approval of its cash management

system which was granted); <u>In re Interco, Inc.</u>, 130 B.R. 301 (Bankr. E.D. Mo. 1991) (order on motion to exempt debtor's foreign bank deposits from requirements of Section 345 referred to "Motion of Debtor and Debtor-in-Possession for Order Clarifying Order Authorizing Maintenance of Cash Management Systems and Continued Use of Certain Existing Bank Accounts, Investment and Deposit Guidelines and Certain Business Forms"); <u>In re FRG, Inc.</u>, 107 B.R. 461, 465 (Bankr. S.D.N.Y. 1989) (order on motion to transfer venue referred to "Application for Order Authorizing Maintenance of Cash Management Systems").

Uncertainty and risk surround every Chapter 11 case.  Included within this class of risks is a debtor-in-possession's struggle to maintain current operations and the value of its assets.  In the Chapter 11 Case at bar, Debtor urgently requires the continued maintenance of its Cash Management System, BofA Account, and CC Processor.  Absent such relief, there is the possibility that Debtor's Chapter 11 Case might flounder, and creditors and other stakeholders be injured needlessly.  To avert this prospect, Debtor seeks authority to maintain its existing Cash Management System, BofA Account, and CC Processor.

Numerous courts and this Court have recognized that strict enforcement of the U.S. Trustee's Guidelines is not always in the best interest of a debtor or its estate and have granted other debtors the same or similar relief to the relief requested herein.  <u>See, e.g.</u>, <u>In re Turnberry/MGM Grand Towers, LLC</u>, Case No. 15-13706 (Bankr. D. Nev. Sept. 21, 2015) [ECF No. 255]; <u>In re Rodeo Creek Gold Inc.</u>, Case No. 13-50301 (Bankr. D. Nev. March 29, 2013) [ECF No. 284]; <u>In re Auburn Dev. LLC</u>, Case No. 11-51188 (Bankr. D. Nev. Apr. 14, 2011) [ECF No. 29]; <u>In re Station Casinos, Inc.</u>, Case No. 09-52477 (Bankr D. Nev. July 28, 2009); <u>In re Zante, Inc.</u>, Case No. 09-50746 (GWZ) (Bankr. D. Nev. Mar. 23, 2009) [ECF No. 36]; <u>see also</u> <u>In re Charter Behavioral Health Systems</u>, LLC, 292 B.R. 36, 41 (Bankr. D. Del. 2003) (allowing the debtor to continue to use its existing bank account without the necessity to close all prepetition accounts and open new postpetition accounts).  Debtor submits that a similar waiver of the U.S. Trustee's Guidelines that would require Debtor to close its BofA Account and open a new "Debtor-in-Possession" account is warranted in this Chapter 11 Case.

…

**B.     Cause Exists to Authorize Debtor to Utilize Existing Cash Management System, BofA Account, and CC Processor.**

Integral to Debtor maintaining its Cash Management System is Debtor's continued use of its existing BofA Account and CC Processor.  As numerous courts have indicated, the Bankruptcy Code grants discretionary authority to a bankruptcy court to allow the continued use of bank accounts.  See e.g., The Charter Co., 778 F.2d at 618 (court noted that the bankruptcy court authorized the debtors to maintain its existing bank accounts); In re Lorber Indus. of Cal., 373 B.R. 663, 665 (B.A.P. 9th Cir. 2007) (discussing that the bankruptcy court allowed the debtor to continue using its prepetition workers' compensation program bank account for the purposes of administering benefits); In re Grant Broad., Inc., 75 B.R. 819, 820 (E.D. Pa. 1987) (court noted an order by the bankruptcy court authorizing use of cash collateral and prepetition bank accounts); Charter Behavioral Health Sys., LLC, 292 B.R. at 41 (court allowed the debtor to continue to use its existing bank accounts without the necessity to close all prepetition accounts and open new postpetition accounts); In re Hechinger Inv. Co. of Del., Inc., 282 B.R. 149, 150 (Bankr. D. Del. 2002) (court entered an order on the petition date authorizing the debtor to continue to use its existing prepetition bank accounts); In re UAL Corp., 2002 WL 34344255, *1 (Bankr. N.D. Ill. 2002) (court authorized the debtors, within the reasonable exercise of their business judgment, to continue using all of their bank accounts in existence on the petition date); In re New York City Shoes, Inc., 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (court approved of the debtor's continued routine deposits of postpetition funds into prepetition bank accounts).

Pursuant to U.S. Trustee Guideline 4.4.6,[2] a Chapter 11 debtor-in-possession must close its prepetition bank accounts and open new accounts.  This requirement is designed to: (1) provide a clear line of demarcation between prepetition and postpetition transactions and operations; and (2) block the inadvertent payment of prepetition claims through the payment of checks drawn prior to the commencement of a debtor's case. However, courts often deviate from the strict recommendations of Guideline 4.4.6 based upon the unique circumstances of each case and if

---

[2] U.S. Trustee Guideline 4.4.6 provides, in general, that a "debtor shall close all financial accounts that existed before the Chapter 11 case and establish new debtor-in-possession accounts to be used for all transactions during the pendency of the case."

1    doing so facilitates a debtor's successful reorganization.  See e.g., The Colad Group, Inc., 324 B.R.

2    at 217; Charter Behavioral Health Sys., 292 B.R. at 41.

3        To require Debtor to close the BofA Account (and thus reestablish the arrangement with

4    the CC Processor on the new account) and open a new bank account would cause substantial

5    disruption and delay in Debtor's operations, particularly as it prepares to reopen in March 2021,

6    would materially and adversely affect Debtor's business operations and the value of its assets.  To

7    avoid such problems and to ensure a smooth transition into Chapter 11, it is imperative that Debtor

8    be permitted to maintain its BofA Account and CC Processor.  See First Day Declaration, ¶¶ 61,

9    64, & 66.

10        Debtor requests that its BofA Account be deemed and designated as a debtor-in-possession

11    account, and that its maintenance, in the same manner and with the same account number, style,

12    and document form (including checks) as during the prepetition period, be authorized, subject only

13    to: (1) other orders of this Court; (2) designation of the BofA Accounts as debtor-in-possession

14    accounts; and (3) a prohibition against honoring prepetition Debits other than the Permitted

15    Checks, as discussed herein, unless (a) specific authorized by this Court, and (b) Debtor has

16    provided a list of such Debits to BofA.  Debtor will advise BofA not to honor Debits issued prior

17    to the commencement of this Chapter 11 Case, except as authorized by this Court.  By so advising

18    BofA, Debtor will have achieved the goals of the requirement that bank accounts be closed.  That

19    is, without disrupting Debtor's ongoing operations, Debtor will have (a) established a clear

20    demarcation between prepetition and postpetition Debits; and (b) blocked the inadvertent payment

21    of prepetition Debits.

22        The Court has the authority, under Section 105(a), to grant the relief requested by Debtor

23    concerning its BofA Account and it is proper for this Court to grant such relief as it is in the best

24    interests of Debtor's creditors and other stakeholders.  Again, Section 105(a) provides, in pertinent

25    part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to

26    carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Because the maintenance

27    and continued use of the BofA Account is crucial to Debtor's Cash Management System, its

28    reopening, and ultimately its reorganization, this Court has the authority to order the relief sought

herein by virtue of Section 105(a).

Based upon the foregoing, any disruption to the Cash Management System, BofA Account, or CC Processor could seriously and irreparably harm Debtor and its estate.  Therefore, pursuant to Sections 105(a) and 363(c)(1), Debtor requests that this Court's authorization to continue the collection, concentration, and disbursement of cash in accordance with its existing Cash Management System, including the maintenance of its existing Cash Management System, BofA Account, and CC Processor.

**C.    The Requirements of Bankruptcy Rule 6003 Have Been Satisfied and Bankruptcy Rule 6004(h) is Properly Waived.**

Pursuant to Sections 105(a) and 363(c)(1), Debtor requests that this Court authorize Debtor to continue the collection, disbursement, and accounting of cash in accordance with its existing Cash Management System, including the maintenance of its existing BofA Account and CC Processor.

Bankruptcy Rule 6003(b) provides "except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition. . . ."  As described above and in the First Day Declaration, if the Cash Management System, BofA Account, or CC Processor are disrupted, Debtor will experience immediate and irreparable harm.  See First Day Declaration, ¶ 66.  To ensure Debtor's chances of successfully maximizing value for Debtor's estate and creditors, this Court should find that the exception set forth in Bankruptcy Rule 6003 applies in this Chapter 11 Case.[3]

Moreover, Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  In view of the urgency of the relief requested herein and the risk to Debtor's operations if Debtor's Cash Management System, BofA Account, or CC Processor are

---

[3] To the extent any of the relief requested herein is not granted on the Petition Date, in the alternative, and out of an abundance of caution, Debtor requests that the Court set a final hearing on any remaining matters on the earliest available date that is more than 21 days after the Petition Date pursuant to Bankruptcy Rule 6003.

interrupted, a fourteen-day stay of the relief sought herein is impractical.  <u>See</u> First Day Declaration, ¶ 67.  Accordingly, Debtor requests that this Court waive the stay under Bankruptcy Rule 6004(h) and provide in the order granting the relief sought herein that such order shall be effective immediately.

**V.**
**<u>CONCLUSION</u>**

WHEREFORE, Debtor respectfully requests interim and final orders, substantially in the form attached hereto as Exhibits 1 and 2, respectively, pursuant to Sections 105, 363(c)(1), 1107(a), and 1108, and Local Rule 4001(e), authorizing Debtor to maintain its prepetition Cash Management System, BofA Account, and CC Processor, and related relief.

Dated February <u>11th</u>, 2021            GARMAN TURNER GORDON LLP


By: <u>*/s/ Mark M. Weisenmiller*</u>
GERALD M. GORDON
MARK M. WEISENMILLER
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
*[Proposed] Attorneys for Debtor*

# EXHIBIT 1

# EXHIBIT 1

GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
MARK M. WEISENMILLER
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*[Proposed] Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-21-10593-nmc |
| RKJ HOTEL MANAGEMENT, LLC, a Nevada limited liability company, | Chapter 11 |
| Debtor. | Date:<br>Time: |

### INTERIM ORDER (I) AUTHORIZING MAINTENANCE OF PREPETITION CASH MANAGEMENT SYSTEM AND BOFA ACCOUNT; AND (II) GRANTING RELATED RELIEF

RKJ Hotel Management, LLC, debtor and debtor-in-possession ("**Debtor**"), by and through its proposed counsel, Garman Turner Gordon, filed its *Motion for Interim and Final Orders: (I) Authorizing Maintenance of Prepetition Cash Management System and BofA Account; and (II) Granting Related Relief* ("**Motion**")[1], which requested entry of interim and

---

[1] All undefined, capitalized terms shall have the meaning ascribed to them in the Motion.

final orders, pursuant to Sections 105, 363(c)(1), 1107(a), and 1108, and Local Rule 4001(e), authorizing Debtor to maintain its prepetition Cash Management System, BofA Account, and CC Processor; and it appearing that the relief provided herein is in the best interests of Debtor's estate, its creditors and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all other pleadings and evidence submitted by the parties in connection with the Motion; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual grounds set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the oral arguments of counsel at the hearings held on _____, 2021, at _____ __.m. ("**Interim Hearing**"); and the Court having made findings of fact and conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Bankruptcy Rules 7052 and 9014; and good and sufficient cause appearing therefor,

> **IT IS HEREBY ORDERED** as follows:

1. The Motion is granted in its entirety on an interim basis;

2. Debtor is authorized and empowered to: (1) maintain its Cash Management System and BofA Account in existence as of the Petition Date; (2) direct BofA to redesignate the BofA Account as a debtor-in-possession account; (3) use, in their present form, existing checks and other documents related to the BofA Account; (4) pay prepetition and postpetition ordinary course bank fees in connection with the BofA Account; and (5) perform its obligations under the documents and agreements governing the BofA Account;

3. Debtor shall maintain records of all transfers and transactions within the Cash Management System so that all transfers and transactions are adequately and promptly documented in, and ascertainable and traceable from, Debtor's Accounting Program;

4.      BofA is authorized and directed to: (1) continue to administer, service, and maintain the BofA Account as such account was administered, serviced, and maintained prior to the Petition Date without interruption and in the usual and ordinary course; and (2) pay any and all checks, drafts, wires, automated clearinghouse (ACH) transfers, electronic fund transfers, or other items presented, issued, or drawn on the BofA Account (collectively, "**Debits**") dated after the Petition Date so long as there are sufficient collected funds in the BofA Account and in accordance with the agreements governing said BofA Account, including, without limitation, any prepetition cash management agreements, merchant service agreements, or treasury services agreements;

5.      For avoidance of doubt, no Debits issued on the BofA Account prior to, but presented after, the commencement of Debtor's Chapter 11 Case shall be honored or paid, other than the Permitted Checks (defined below) explicitly provided for herein, or as otherwise permitted by Court order after notice and a hearing;

6.      The Debtor will promptly provide BofA with a list of pre-Petition Date checks that BofA is authorized to honor ("**Permitted Checks**").  If a vendor that was issued a Permitted Check refuses or is otherwise unable to re-present the prepetition check for payment, Debtor is authorized to issue a replacement check or cashier's check, as requested by such vendor;

7.      Those certain existing deposit agreements between Debtor and BofA shall continue to govern the postpetition cash management relationship between Debtor and BofA, and all the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect;

8.      Debtor and BofA may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts;

9.      Nothing contained in this Order prevents Debtor from closing the BofA Account as it deems necessary and appropriate;

10.     Debtor shall reimburse BofA for any claim arising prior to or after the Petition Date in connection with Debits deposited with BofA which have been dishonored or returned for insufficient funds in the applicable accounts;

11.     BofA shall implement reasonable handling procedures to effectuate the terms requested in the Motion.  To the extent BofA implements such handling procedure, BofA shall not be liable to Debtor or its estate, or otherwise held in violation of this Order, for honoring a payment set forth in Paragraph 6 of this Order or another order of the Court;

12.     To the extent any other order (if any) is entered directing BofA to honor Debits made, drawn, or issued in payment of prepetition claims, the obligation to honor such items are subject to this Order;

13.     Debtor and BofA are authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the BofA Account, except and to the extent otherwise directed by the terms of this Order;

14.     BofA is authorized to continue offsetting any funds deposited in the BofA Account by Debtor to the extent necessary to cover any fees, charges, and assessments set forth or provided for in the agreements governing the BofA Account or as otherwise permitted in the ordinary course of business pursuant to the agreements governing the BofA Account;

15.     Debtor and the CC Processor are authorized to perform their obligations pursuant to the terms of the agreement between Debtor and the CC Processor.  Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents, and to pay fees, charges, and expenses which may be required or necessary for Debtor's performance under any agreements with the CC Processor;

16.     Debtor is excepted from the operation of Bankruptcy Rule 6003(b), as the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate; and

17.     Any stay pursuant to Bankruptcy Rule 6004(h) or otherwise is hereby waived, and the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

1    18.    A final hearing on the Motion shall be held on _____, 2021, at _____ __.m.

2    **IT IS SO ORDERED.**

3    Prepared and Submitted by:

4    GARMAN TURNER GORDON LLP

5

6    By: */s/ Mark M. Weisenmiller*
     GERALD M. GORDON
7    MARK M. WEISENMILLER
     7251 Amigo Street, Suite 210
8    Las Vegas, Nevada 89119
     Telephone (725) 777-3000
9    Facsimile (725) 777-3112
     *[Proposed] Attorneys for Debtor*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☒    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the order.

EDWARD M. MCDONALD, JR.
*Office of the United States Trustee*

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

# EXHIBIT 2

# EXHIBIT 2

GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
MARK M. WEISENMILLER
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*[Proposed] Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>RKJ HOTEL MANAGEMENT, LLC, a Nevada limited liability company,<br><br>                     Debtor. | Case No.: BK-S-21-10593-nmc<br><br>Chapter 11<br><br><br>Date:<br>Time: |

**FINAL ORDER: (I) AUTHORIZING MAINTENANCE OF PREPETITION CASH MANAGEMENT SYSTEM AND BOFA ACCOUNT; AND (II) GRANTING RELATED RELIEF**

RKJ Hotel Management, LLC, debtor and debtor-in-possession ("**Debtor**"), by and through its proposed counsel, Garman Turner Gordon, filed its *Motion for Interim and Final Orders (I) Authorizing Maintenance of Prepetition Cash Management System and BofA Account; and (II) Granting Related Relief* ("**Motion**")[1], which requested entry of interim and final orders,

---

[1] All undefined, capitalized terms shall have the meaning ascribed to them in the Motion.

pursuant to Sections 105, 363(c)(1), 1107(a), and 1108, and Local Rule 4001(e), authorizing Debtor to maintain its prepetition Cash Management System, BofA Account, and CC Processor; and it appearing that the relief provided herein is in the best interests of Debtor's estate, its creditors and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all other pleadings and evidence submitted by the parties in connection with the Motion; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual grounds set forth in the Motion establish just cause for the relief granted herein; and the Court having entered an interim order on the Motion on _____, 2021 [ECF No. ____]; and the Court having considered the oral arguments of counsel at the final hearing held on _____, 2021, at _____ ___.m. ("**Final Hearing**"); and the Court having made findings of fact and conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Bankruptcy Rules 7052 and 9014; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1.      The Motion is granted in its entirety on a final basis;

2.      Debtor is authorized and empowered to: (1) maintain its Cash Management System and its BofA Account in existence as of the Petition Date; (2) direct Bank of America ("**BofA**") to redesignate the BofA Account as a debtor-in-possession account; (3) use, in their present form, existing checks and other documents related to the BofA Account; (4) pay prepetition and postpetition ordinary course bank fees in connection with the BofA Account; and (5) perform its obligations under the documents and agreements governing the BofA Account;

3.　　Debtor shall maintain records of all transfers and transactions within the Cash Management System so that all transfers and transactions are adequately and promptly documented in, and ascertainable and traceable from, Debtor's Accounting Program;

4.　　BofA is authorized and directed to: (1) continue to administer, service, and maintain the BofA Account as such account was administered, serviced, and maintained prior to the Petition Date without interruption and in the usual and ordinary course; and (2) pay any and all checks, drafts, wires, automated clearinghouse (ACH) transfers, electronic fund transfers, or other items presented, issued, or drawn on the BofA Account (collectively, "**Debits**") dated after the Petition Date so long as there are sufficient collected funds in the BofA Account and in accordance with the agreements governing said BofA Account, including, without limitation, any prepetition cash management agreements, merchant service agreements, or treasury services agreements;

5.　　For avoidance of doubt, no Debits issued on the BofA Account prior to, but presented after, the commencement of Debtor's Chapter 11 Case shall be honored or paid, other than the Permitted Checks (defined below) explicitly provided for herein, or as otherwise permitted by Court order after notice and a hearing;

6.　　The Debtor will promptly provide BofA with a list of pre-Petition Date checks that BofA is authorized to honor ("**Permitted Checks**").  If a vendor that was issued a Permitted Check refuses or is otherwise unable to re-present the prepetition check for payment, Debtor is authorized to issue a replacement check or cashier's check, as requested by such vendor;

7.　　Those certain existing deposit agreements between Debtor and BofA shall continue to govern the postpetition cash management relationship between Debtor and BofA, and all the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect;

8.　　Debtor and BofA may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts;

9.      Nothing contained in this Order prevents Debtor from closing the BofA Account as it deems necessary and appropriate;

10.     Debtor shall reimburse BofA for any claim arising prior to or after the Petition Date in connection with Debits deposited with BofA which have been dishonored or returned for insufficient funds in the applicable accounts;

11.     BofA shall implement reasonable handling procedures to effectuate the terms requested in the Motion.  To the extent BofA implements such handling procedure, BofA shall not be liable to Debtor or its estate, or otherwise held in violation of this Order, for honoring a payment set forth in Paragraph 6 of this Order or another order of the Court;

12.     To the extent any other order (if any) is entered directing BofA to honor Debits made, drawn, or issued in payment of prepetition claims, the obligation to honor such items are subject to this Order;

13.     Debtor and BofA are authorized and directed to continue to perform pursuant to the terms of any prepetition documents and agreements governing the BofA Account, except and to the extent otherwise directed by the terms of this Order;

14.     BofA is authorized to continue offsetting any funds deposited in the BofA Account by Debtor to the extent necessary to cover any fees, charges, and assessments set forth or provided for in the agreements governing the BofA Account or as otherwise permitted in the ordinary course of business pursuant to the agreements governing the BofA Account;

15.     Debtor and the CC Processor are authorized to perform their obligations pursuant to the terms of the agreements between Debtor and the CC Processor.  Debtor is authorized to do and perform all acts, to make, execute, and deliver all instruments and documents, and to pay fees, charges, and expenses which may be required or necessary for Debtor's performance under any agreements with the CC Processor;

16.     Debtor is excepted from the operation of Bankruptcy Rule 6003(b), as the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate; and

17.     Any stay pursuant to Bankruptcy Rule 6004(h) or otherwise is hereby waived, and the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

**IT IS SO ORDERED.**

Prepared and Submitted by:

GARMAN TURNER GORDON LLP


By: */s/ Mark M. Weisenmiller*
    GERALD M. GORDON
    MARK M. WEISENMILLER
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    Telephone (725) 777-3000
    Facsimile (725) 777-3112
    *[Proposed] Attorneys for Debtor*

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☒　　The court waived the requirement of approval under LR 9021(b)(1).

☐　　No party appeared at the hearing or filed an objection to the motion.

☒　　I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the order.

EDWARD M. MCDONALD, JR.
*Counsel for the Office of the United*
*States Trustee*

☐　　I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

###